UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE:<br><br>MEANS, JAMES F., JR<br>                      Debtor.<br><br>FACTORING OF OKLAHOMA, L.L.C.,<br>                      Plaintiff,<br>v.<br><br>JAMES F. MEANS, JR,<br>                      Defendant. | Case No. 05-19631-R<br>Chapter 7<br><br><br><br><br><br>Adv. No. 05-01240-R |

**ORDER DENYING PLAINTIFF FACTORING OF OKLAHOMA'S
MOTION FOR SUMMARY JUDGMENT**

On December 22, 2005, Plaintiff Factoring of Oklahoma, L.L.C. ("Factoring") filed the Corrected Complaint to Determine Dischargeability of Debt Under Section 523 (the "Complaint"). In the Complaint, Factoring requests that the debt evidenced by an Agreed Journal Entry of Judgment (the "Agreed Judgment") entered by a state court in favor of Factoring and against the Defendant Debtor James F. Means ("Means") be declared nondischargeable pursuant to Section 523(a)(2) of the Bankruptcy Code. On February 1, 2006, Means filed the Defendant's Answer (the "Answer"). In his Answer, Means admits that Factoring is a creditor but objects to Factoring's claim that the debt at issue is nondischargeable.

Before the Court are Plaintiff Factoring of Oklahoma's Motion for Summary Judgment and Plaintiff's Memorandum of Law in Support of Summary Judgment filed by Factoring on May 30, 2006 (the "Motion"); Defendant's Response and Objection to Plaintiff's Motion for Summary Judgment filed by Means on June 23, 2006 (the "Response"); and Plaintiff's Reply Brief to Defendant's Response to Summary Judgment filed by Factoring on July 3, 2006 (the "Reply").  Factoring contends that it is entitled to judgment as a matter of law on all causes of action in the Complaint.

**Summary of the Parties' Contentions**

Factoring contends that the Agreed Judgment contains findings and conclusions that establish that Means's debt to Factoring is one for money obtained by Means's false pretenses, false representations, and actual fraud and that those findings and conclusions are sufficient to establish its claim under Section 523(a)(2)(A) of the Bankruptcy Code[1] and are binding upon this Court under the doctrine of collateral estoppel, or issue preclusion.[2]

---

[1] Section 523(a)(2)(A) of the Bankruptcy Code states that a debtor is not discharged from any debt to the extent it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(B) provides that a debtor is not discharged from any debt that was obtained by the use of a *statement in writing* that is materially false, respecting the debtor's financial condition, upon which the creditor reasonably relied, and that the debtor caused to be made with intent to deceive.  11 U.S.C. § 523(a)(2)(B). Although Factoring contends that the issues of fact and law set forth in the Agreed Judgment also supports a claim under Section 523(a)(2)(B), the Complaint, the Motion and the Agreed Judgment fail to refer to a "statement in writing" as required by Section 523(a)(2)(B).

[2] "Issue preclusion and collateral estoppel are two different names for the same legal doctrine.  The former was introduced through the Restatement, the latter is a common-law term of long usage." Fent v. Okla. Natural Gas Co., 1994 OK 108, 898 P.2d 126, 133 at n. 19.  As is discussed later in this opinion, the Court will use the term "issue preclusion" to refer to the doctrine.

2

Factoring asserts that there are no issues of fact remaining to preclude the Court from granting summary judgment in favor of Factoring on its claim.

Means denies that he made any false representations, committed any fraud or had the intent necessary to support a claim under Section 523(a)(2)(A), and he contends that the findings and conclusions in the Agreed Judgment, that allegedly establish that Means's debt to Factoring is not dischargeable, should not be given preclusive effect because the issues were never actually litigated. Means argues that the Court must make an independent determination of the issue of dischargeability under Section 523(a)(2)(A) of the Bankruptcy Code.

In evaluating Factoring's Motion, the Court must determine whether relitigation of the findings and conclusions set forth in the Agreed Judgment is precluded under the doctrine of issue preclusion.

**Jurisdiction**

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334(b), 157(a), 157(b)(2)(I) and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

**Summary Judgment Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), made applicable to this proceeding by Fed. R. Bank. P. 7056.[3]

---

[3] Summary judgment is difficult to obtain when the central issue is the intent of one of the parties and such matters are usually best determined at a trial on the merits. See Adams County Dept. of Social Servs. (In re Sutherland-Minor), 345 B.R. 348, 356 (Bankr.

3

In ruling on summary judgment motions, a court must consider which party has the burden of proof at trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). When the movant has the burden of proof, "the movant must establish every element of its claim . . . by sufficient, competent evidence to set forth a *prima facie* case." In re Ribozyme Pharmaceuticals, Inc. Securities Litigation, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002) (footnote omitted).  Then, the nonmovant cannot rest on its pleadings but must present sufficient, contradictory evidence to demonstrate that there are genuine issues of fact for trial.

**The Record on Summary Judgment**

Rule 56(c) provides that summary judgment may be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact[.]"  Fed. R. Civ. P. 56(c). In addition, a court may consider in ruling on a summary judgment motion any materials which would be admissible at trial.  See Cinocca v. Baxter Laboratories, Inc., 400 F. Supp. 527, 529 (E.D. Okla. 1975)(citation omitted).  "As a general rule, documents which are submitted in support of a Motion for Summary Judgment must be authenticated by an affidavit.  However, uncertified documents may be considered by the Court if not challenged." Id. at 530 (citation omitted).  Neither party has objected to or challenged the admissibility of the other party's exhibits.  Accordingly, the Court finds that the exhibits submitted with both parties' pleadings, as well as the Complaint and the Answer, should be considered.

**Material Facts**

---

D. Colo. 2006)(citations omitted).

4

For purposes of summary judgment, the following facts are material and supported by the evidentiary record.[4]

Means's mother, Carolyn Jessee ("Jessee") owned Pounds & Francs, Inc., an Oklahoma corporation ("Pounds"). See Def. Stmt. ¶ 1. Means, as President of Pounds, managed Pounds's business dealings with Factoring. Def. Stmt. ¶ 2. On April 25, 2002, Pounds and Factoring entered into a Purchase and Sale Agreement whereby Factoring agreed to purchase accounts receivable from Pounds for the sum of $441,517.47. Pltf. Stmt. ¶ 1. Means "personally, absolutely unconditionally and simultaneously guaranteed" Pounds's performance under the Purchase and Sale Agreement. Pltf. Stmt. ¶ 2. Means agreed to pay all of Factoring's losses, damages and expenses incurred as a result of and in the event of a breach of the Purchase and Sale Agreement by Pounds. Id.

In early 2003, Pounds began to experience financial difficulties. Def. Stmt. ¶ 3. Pounds defaulted under the terms of the Purchase and Sale Agreement. Pltf. Stmt. ¶ 3. On March 21, 2003, Factoring filed an action against Means, Pounds and Jessee (collectively, the "defendants") in the District Court of Oklahoma County, Oklahoma, in a case styled Factoring of Oklahoma, LLC v. Pounds and Francs, Inc., Carolyn Jessee, and James Means, Case No. CJ-2003-2500 (the "State Court Action"). Pltf. Stmt. ¶ 4; see also Motion, Exh. F at 1-2, and H. In the State Court Action, Factoring asserted claims for breach of contract, embezzlement and fraud against each of the defendants. See Pltf. Exh. F.

---

[4] References to the Statement of Material Facts Not in Controversy in the Motion are identified as "Pltf. Stmt. ¶__" and references to the Additional Material Facts Not in Dispute in the Response are identified as "Def. Stmt. ¶__." The material facts are not in dispute. A material fact is one that might affect the outcome of the suit under the governing law. See Liberty Lobby, 477 U.S. at 248.

On April 10, 2003, Means and Jessee received a facsimile copy of an unexecuted "Stand Still Agreement" and a proposed Agreed Judgment from Donald Leeman, counsel for Factoring ("Leeman"). Until Means and Jessee reviewed the Stand Still Agreement which referenced the State Court Action, they had no knowledge of the pending lawsuit against them. Def. Stmt. ¶ 4. The terms of the Stand Still Agreement required that the defendants agree to make monthly payments to Factoring as set forth in the agreement or the defendants' entire debt to Factoring would be due and payable on April 30, 2003. In addition, the Stand Still Agreement provided in pertinent part –

> Defendants agree to reaffirm all debts to Factoring of Oklahoma, its successors or assigns, in any and all bankruptcy proceedings that may be filed before, during or after the consummation of this agreement, as to the remaining unpaid sums and terms appearing in the Journal Entry of Judgement which is otherwise subject to the Stand Still Agreement; and
>
> Upon the agreements and execution of all parties to this Stand Still Agreement, Defendants agree to execute, approve and enter into a Journal Entry of Judgement in the case filed in the District Court of Oklahoma County DC CJ-2003-2500 for the sums plead [sic] for therein, including punitive or exemplary damages equal to the amount of money therefore together with all attorneys fees and court costs, together with interest thereon at the negotiated rate of eight percent (8%) per annum from the date of default. It is further provided that the judgement will be *recorded* only in the event of failure to have reaffirmed the debt to Factoring of Oklahoma in a timely manner in any bankruptcy proceedings as herein before provided, the failure to make timely payments until the debt and all costs related thereto are paid in full, or the breach of any other provisions of this agreement.

\* \* \*

> In consideration of performance in full by Defendants, Factoring of Oklahoma as Plaintiff, agrees as follows:

6

> Upon the agreements and execution of all parties to this Stand Still Agreement and the Journal Entry of Agreed Judgement in the aforesaid Case No. CJ-2003-2500, to execute the same and in a timely manner present the Journal Entry of Judgement for approval by the court. However, it would only be *recorded* in the event of a default by Defendants as herein set forth[.]

Response, Exh. 2 at 3-4 (emphasis added). On the date that Means and Jessee received the Stand Still Agreement and Agreed Judgment, they contacted Leeman to discuss the documents. Leeman told Means and Jessee that "he was going to put [Pounds] out of business if they did not sign and return the 'Journal Entry of Agreed Judgment' and 'Stand Still Agreement' by 4:30 p.m. that afternoon." Def. Stmt. ¶ 5. On April 10, 2006, Means and Jessee executed the Stand Still Agreement and the Agreed Judgment.[5] Neither Means nor Jessee consulted an attorney prior to executing the documents. None of the defendants filed an answer in the State Court Action. See Pltf. Exh. H. On April 11, 2003, the parties executed Schedule A attached to the Stand Still Agreement, which sets forth the schedule of payments due under the Stand Still Agreement. Def. Stmt. ¶ 7; Response, Exh. 2 at 5-6.

In its Motion, Factoring set forth the following pertinent provisions of the Agreed Judgment –

    a.    That default has been made in the remittance of the proceeds of accounts receivable as promised entitling Plaintiff to judgment against the Defendants in the sum of $441,517.47, with interest thereon at the agreed rate of eight percent per annum from March 1, 2003.

---

[5] Although there is no dispute that the parties entered into the Stand Still Agreement, the copy of the Stand Still Agreement attached to the Response at Exhibit 2 is not executed by the parties. Schedule A of the Stand Still Agreement is executed by Pounds, Jessee, Means and Factoring and dated April 11, 2003.

b. That Defendants in ongoing and continuous acts of misrepresentation, induced Plaintiff to purchase the invoices pursuant to the Purchase and Sale Agreements [sic] under which it warrants and covenants that immediately prior to the delivery of these assets that Defendant [sic] represents that Seller would be sole owner and that the amount of each account would be due and owing at the time it was sold, and further sold false and invalid invoices prepared by Defendants as Sellers [sic] for which goods and services has [sic] not been performed, and for which said sums are not collectible, which sums remain uncollected and due to Plaintiff.

c. That all the representations of the Defendant [sic], Pounds & Francs, were made for the purposes of inducing Plaintiff to purchase invoices, that Plaintiff relied upon the representations of the Defendants in making the purchases of the accounts receivable as stated herein, said reliance being to its detriment for the reasons that the matter and things represented were not true, and the Plaintiff has been damaged by the misrepresentations in the sum of $441,517.47.

d. That the money obtained by Defendant [sic] from Plaintiff was obtained by false pretenses, false representation by reason of a materially false statement representing the existence of accounts receivable; that the defendant [sic] caused the false statements to be made and published with the intent to deceive.

e. That the representations upon which Plaintiff relied were malicious, reckless and in complete disregard of Plaintiff's rights entitling Plaintiff to exemplary damages against said Defendants in the sum equal to the amount of actual damages hereinabove set forth.

f. That all the representation [sic] of the Defendant [sic] to the Plaintiff were made for the purpose of inducing [sic] to purchase invoices; that Plaintiff relied upon the representations of the Defendant [sic] in making the purchases of the accounts receivable as stated herein; said reliance being to its detriment for the reasons that the matters and things represented were no [sic] true; and that Plaintiff has been damaged by the misrepresentations in the sum of $441,517.47.

g. That the money obtained by Defendant [sic] from Plaintiff was obtained by false pretenses, false representation by reason of a materially false statement representing the existence of accounts receivable; that the Defendant [sic] caused the false statements to be made and published with the intent to deceive.

> h. Without the knowledge and consent of Plaintiff, Pounds & Francs and the Defendant [sic] converted and embezzled money due under the invoices and accepted payment from the debtors under the accounts receivable and Defendants acknowledged there [sic] receipt of the money and their subsequent failure to deliver the funds to the Plaintiff.

Pltf. Stmt. ¶ 5 (internal quotations and footnotes omitted). On April 30, 2003, the Court entered the Agreed Judgment.[6] Pltf. Stmt. ¶ 5. From March 21, 2003, the date the petition was filed in the State Court Action, until April 30, 2003, the date the Agreed Judgment was entered, no pleadings were filed and there was no docket activity in the State Court Action.

On November 1, 2004, Means and the other defendants in the State Court Action filed a motion to vacate the Agreed Judgment (the "Motion to Vacate"). Pltf. Stmt. ¶ 7. On June 3, 2005, the defendants' Motion to Vacate was overruled. Pltf. Stmt. ¶ 8. Although Factoring refers to the Order overruling the Motion to Vacate as Exhibit H to its Motion, Factoring failed to attach the Order. See Motion at 5, n. 8; Exhibit H (which is a copy of the docket sheet from the State Court Action). There is no evidence in the record regarding the basis for the state court's denial of the Motion to Vacate.

---

[6] In his Response, Means asserts that Factoring filed the Agreed Judgment in violation of the Stand Still Agreement. However, the Stand Still Agreement specifically provided that the Agreed Judgment would be presented to the court for approval upon execution by all the parties. The Stand Still Agreement further provided that the Agreed Judgment would "only be recorded in the event of default" by the defendants. Response, Exh. 2 at 4. Factoring asserts that it "merely filed the judgment in the clerk's office" and that it did not record the judgment in the land records. Reply at 8.

9

Means contends that Factoring subsequently agreed to vacate the Agreed Judgment.[7] However, the alleged "settlement agreement" is not a part of the record and the Agreed Judgment was never vacated.[8]  Def. Stmt. ¶¶ 15-16; Answer at 2.

In 2005, Means, Jessee and Pounds filed a lawsuit against Factoring to enforce the terms of the alleged settlement agreement in the District Court of Oklahoma County, Oklahoma, Case No. CJ 2005-3145 (the "2005 State Court Action").  Def. Stmt. ¶ 17. Means, Jessee and Pounds filed a motion for summary judgment in the 2005 State Court Action. The motion for summary judgment in the 2005 State Court Action has not been adjudicated.

---

[7] In his Response, Means asserts that James Love, on behalf of the defendants, negotiated a settlement agreement between Factoring and the defendants and that such fact is supported by the Affidavit of James Love.  See Def. Stmt. ¶¶ 15-16.  However, Means failed to attach the Affidavit of James Love to the Response.  There is no other evidence in the record to establish that the parties entered into a settlement agreement.

[8] In his Response, Means asserts that the Agreed Judgment "is void because its execution and filing were obtained in violation of Oklahoma law and the terms of the Stand Still Agreement."  Response at 11.  "Under both Oklahoma law and federal law, . . . a judgment is 'void' if the trial court lacked (1) jurisdiction over the person; (2) jurisdiction over the subject matter; (3) judicial power to render the particular judgment; or (4) if the judgment was procured by fraud." Abboud v. Abboud (In re Abboud), 237 B.R. 777, 782 (B.A.P. 10th Cir. 1999)(citations omitted). The record before the Court does not establish that any of these grounds exist.  The appropriate avenue for review of the Agreed Judgment is by direct attack of the Agreed Judgment through the Oklahoma appeals process.  "Federal-state comity requires that once a court of competent jurisdiction has validly entered a judgment, that judgment is valid unless and until it is overturned or vacated by a court that has supervisory powers over that court's system.  The *Rooker-Feldman* Doctrine stands for the principle that federal trial courts, such as the bankruptcy court, 'have only original subject matter, and not appellate, jurisdiction [and] . . . may not entertain appellate review of a state court judgment.'"  In re Steward, 338 B.R. 654, 658 (Bankr. D.N.J. 2006), *quoting* Patti v. Fred Ehrlich, PC, 304 B.R. 182, 186 (E.D. Pa. 2003)(other citations omitted).

On August 26, 2005, more than two years after Means, Jessee and Pounds executed the Stand Still Agreement and the Agreed Judgment, Pounds filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code.[9] On October 14, 2005, Means filed a voluntary Chapter 7 bankruptcy petition.[10] Main case Docket No. ("Main doc.") 1. Means's schedule of creditors holding unsecured nonpriority claims reflected Factoring's claim in the amount of $973,426.00.[11]

**Discussion**

### Issue Preclusion

The doctrine of issue preclusion applies in bankruptcy dischargeability proceedings. See Grogan v. Garner, 498 U.S. 279, 284 n.11(1991). "While a bankruptcy court ultimately determines whether a debt is nondischargeable under § 523, a state court judgment may preclude the relitigation of settled facts under the collateral estoppel doctrine." Merrill v. Merrill (In re Merrill), 252 B.R. 497, 504 (B.A.P. 10th Cir. 2000), *citing* Klemens v. Wallace (In re Wallace), 840 F.2d 762, 765 (10th Cir. 1988)("[C]ollateral estoppel is binding on the bankruptcy court and precludes relitigation of factual issues[.]")(citations omitted).

The Full Faith and Credit Act requires this Court to give the same "full faith and credit" to a judgment of a state court as the judgment has "by law or usage in the courts of such State." 28 U.S.C. § 1738. When a federal court reviews the preclusive effect of a state

---

[9] Pounds's Chapter 11 case was converted to a Chapter 7 case on August 23, 2006.

[10] Jessee filed a voluntary Chapter 7 bankruptcy petition on October 14, 2006.

[11] Means described Factoring's judgment claim of $973,426.00 as non-contingent, liquidated and disputed. Main doc. 1 at 14.

11

court judgment, it is required by the Full Faith and Credit Act to look "to the preclusion law of the State in which the judgment was rendered." Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985). Because the Agreed Judgment was entered in an Oklahoma state court proceeding, this Court must review Oklahoma law to determine whether the Agreed Judgment should be given preclusive effect.

**Issue Preclusion under Oklahoma Law[12]**

Oklahoma courts follow the Restatement in formulating its doctrine of issue preclusion. Ruyle v. Continental Oil Co., 44 F.3d 837, 843, 846 (10th Cir. 1994), *citing* Wilson v. Kane, 852 P.2d 717, 722 n.23 (Okla. 1993)(other citations omitted). "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent

---

[12] In Oklahoma, a party relying on a judgment for its issue-preclusive effect must "produce– as proof of its terms, effect and validity– the *entire* judgment roll for the case which culminated in the decision invoked as a bar to relitigation." Salazar v. City of Oklahoma City, 1999 OK 20, 976 P.2d 1056, 1061 (Okla. 1999). In Oklahoma, the record "shall be made up from the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court . . . . " 12 O.S. § 32.1. "Failure to submit the entire judgment roll 'is fatal to [an] issue-preclusion defense" on summary judgment.'" Gouskos v. Griffith, 122 Fed. Appx. 965, 974 (10th Cir. 2005), *quoting* Salazar, 976 P.2d at 1062.

In support of its Motion, Factoring proffered the Complaint, the Agreed Judgment, the Motion to Vacate the Agreed Judgment, and a copy of the docket sheet in the State Court Action. Factoring failed to produce the entire judgment roll. Specifically, Factoring failed to produce evidence of service of process as well as the state court's order overruling Means's Motion to Vacate. Although the order is referenced in the Motion as "Exhibit H," Exhibit H includes the state court docket sheet rather than the order.

12

action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982).[13]  Oklahoma's doctrine of issue preclusion provides that:

> [O]nce a court has decided an issue of fact or of law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim.  Issue preclusion may apply when the party to be precluded has had a "full and fair opportunity" to litigate the issue that was adversely resolved. *The party relying on the defense of issue preclusion bears the burden of establishing that the issue to be precluded was **actually litigated and determined** in the prior action between the parties or their privies, and that its resolution was essential to a decision in that action*.

Salazar v. City of Oklahoma City, 1999 OK 20, 976 P.2d 1056, 1060-61 (Okla. 1999)(footnotes omitted)(emphasis added).  Thus, under Oklahoma law, the party relying on the doctrine of issue preclusion must establish:  (1) a final judgment on the merits in prior litigation; (2) the issue sought to be precluded is identical to one previously litigated; (3) the issue was actually litigated and necessarily determined in the prior proceeding; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum.  See Salazar, 976 P.2d at 1060-61; Carris v. John R. Thomas and Assocs., P.C., 1995 OK 33, 896 P. 2d 522, 528; Nealis v. Baird, 1999 OK 98, 996 P.2d 438, 458.  In other words, issue preclusion precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was actually adjudicated[14] and necessarily determined.[15]

---

[13] Issue preclusion prevents the relitigation of an issue of ultimate fact that has already been determined by a valid judgment in previous litigation between the same parties. Fent v. Okla. Natural Gas Co., 1994 OK 108, 898 P.2d 126, 133 (Okla. 1994).

[14] "Issue preclusion may apply when the party to be precluded has had an opportunity and incentive to litigate a particular issue and has lost on that issue.  The defendant must show that the issue sought to be precluded was actually litigated and determined in the prior

13

See State *ex rel*. Okla. Bar Ass'n v. Giger, 93 P.3d 32, 38 (Okla. 2004), *citing* Nealis v. Baird, 1999 OK 98, 996 P.2d 438, 458; see also Hesser v. Central Nat. Bank & Trust Co. of Enid, 1998 OK 15, 956 P.2d 864, 868 (citation omitted); Carris, 896 P.2d at 528; Miller v. Miller, 1998 OK 24, 956 P.2d 887, 897.  "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined[.]"  Wilson v. City of Tulsa, 2004 OK CIV APP 44, 91 P.3d 673, 677, *quoting* Nealis, 996 P.2d at 458. The party seeking to apply issue preclusion "must show that the issue sought to be precluded was actually litigated and determined in the prior action[.]"  Miller, 956 P.2d at 897.

In order to determine whether the issues of fact or law in the Agreed Judgment that support a claim for nondischargeability should be given preclusive effect, the Court must address whether such issues were "actually litigated" in the State Court Action.

**Consent Judgments**

When a judgment is entered by consent, none of the issues is actually litigated.  See Restatement (Second) of Judgments, § 27, Comment (e).[16]  However, issue preclusion may still be applicable if it is clear that the parties intended that the issues addressed in the

---

action between the parties or their privies, and that the determination was essential to the decision in the prior action."  Miller v. Miller, 1998 OK 24, 956 P.2d 887, 897 (Okla. 1998).

[15] "An issue is necessarily determined if the judgment would not have been rendered but for the determination of that issue.  Nealis v. Baird, 1999 OK 98, 996 P.2d 438, 458 (footnote omitted).

[16] "[W]hen a particular fact is established not by judicial resolution but by stipulation of the parties, that fact has not been 'actually litigated' and thus is not a proper candidate for issue preclusion[.]"  Gordon v. State of Okla. (In the Matter of G.G.), 2004 OK CIV APP 71, 97 P.3d 1155, 1159, *quoting* U.S. v. Botefuhr, 309 F.3d 1263, 1282 (10th Cir. 2002)(citation omitted).

14

consent judgment could not be relitigated in a subsequent action between the parties. Id. Restatement (Second) of Judgments § 27, Comment (e) provides in pertinent part that–

> "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section [27] does not apply with respect to any issue in a subsequent action. The judgment may be conclusive, however, with respect to one or more issues, **if the parties have entered an agreement manifesting such an intention**."

Id. (emphasis added).

Oklahoma case law provides little guidance regarding instances when consent judgments should be given preclusive effect. However, decisions in other jurisdictions address when issue preclusion is appropriately applied to a consent judgment. Generally, consent judgments should not be given preclusive effect unless it is clear that the parties intended the judgment to have such preclusive effect. See Bicknell v. Stanley, 118 B.R. 652, 665 (S.D. Ind. 1990), *citing* Hentschel v. Smith, 153 N.W.2d 199, 205 (1967)(consent judgment does not have issue preclusion effect unless such an affirmative intention can be found; such an intention should not be inferred from the circumstance, taken alone, that the agreement or judgment contains a stipulation or recital of the facts existence)(other citations omitted; see also Smith v. Beeson (In re Smith), 128 B.R. 488, 491 (S.D. Fla. 1991)(consent judgment given preclusive effect in dischargeability proceeding where parties' intent that judgment was a final adjudication was clearly manifested by the express language in the judgment that the debt would be nondischargeable in a bankruptcy proceeding); Metropolitan Steel, Inc. v. Halverson (In re Halversen), 330 B.R. 291, 303 (Bankr. M.D. Fla. 2005)(central inquiry to determine whether the issues decided by consent or stipulation should be given

15

preclusive effect is whether the parties intended the consent judgment to be a final adjudication of factual issues); Dorminy v. U.S. (In re Dorminy), 301 B.R. 599, 604 (Bankr. M.D. Fla. 2003)(a consent judgment may not have preclusive effect unless such intent is clearly manifested or reflected in the parties' agreement).  "If the parties intended for the consent judgment to operate as a final adjudication of the factual issues contained in the judgment, <u>and</u> if the judgment includes sufficiently detailed findings of fact regarding the issues, the issues were 'actually litigated' for purposes of applying the doctrine of collateral estoppel." Halversen, 330 B.R. at 303, *citing* Halpern v. First Georgia Bank (In re Halpern), 810 F.2d 1061, 1064 (11th Cir. 1987)(emphasis added).  The consent judgment or agreement between the parties must contain "far-reaching preclusive language." In re GHR Energy Corp., 62 BR. 226, 232 (Bankr. S.D. Tex. 1986)(issue preclusion did not apply to an agreed order because the order did not contain "broad preclusive language or the requisite intent")(citation omitted).  A court may look to the judgment or other evidence in the record to determine the intent of the parties. See Smith, 128 B.R. at 491, *citing* Halpern, 810 F.2d at 1064.

In Halpern, the court found that the parties intended a prior state court consent order to operate as a final adjudication where the order included detailed factual findings sufficient to satisfy § 523(a)(2)(A) <u>as well as</u> explicit language providing that liability under the judgment would be excepted from discharge in any bankruptcy case. Halpern, 810 F.2d at 1064-65. The court reasoned that this evidence clearly demonstrated that the parties intended the consent judgment to be a final adjudication of the issues therein. Id.

Similarly, in <u>Smith</u>, the court determined that a state court judgment, predicated upon stipulated admissions of law and fact and the parties' settlement agreement, which expressly provided that "this agreement is predicated upon the agreement and understanding that the referenced three million dollar agreed judgment is not dischargeable in bankruptcy[,]" would be given preclusive effect. <u>Smith v. Beeson (In re Smith)</u>, 128 B.R. 488, 491 (Bankr. S.D. Fla. 1991).

In <u>Kohlenberg v. Baumhaft (In re Bauhaft)</u>, 271 B.R. 517, 522-23 (Bankr. E.D. Mich. 2001), the court applied issue preclusion and granted summary judgment where the settlement agreement that related to a consent judgment listed specific facts allowing the court to conclude a debt was excepted from discharge pursuant to § 523(a)(2)(A) and (B) <u>and</u> the agreement provided that the parties would not object to the dischargeability of the debt in any subsequent bankruptcy proceeding.

In <u>American Express Travel Related Servs. Co. v. Hernandez (In re Hernandez)</u>, 195 B.R. 824 (Bankr. D.P.R. 1996), the court determined that a consent judgment "which merely includes a statement that the parties agree that the debt is not dischargeable in future bankruptcy proceedings <u>without</u> inclusion of the underlying facts serving as the basis for the exception is not adequate for collateral estoppel to be applied to that issue." <u>Id.</u> at 829.

In its Motion, Factoring addressed only one element of issue preclusion. Factoring argued that the Agreed Judgment should be given preclusive effect because Means had a "full and fair opportunity" to litigate the issues.[17] Factoring asserts that because the defendants

---

[17] "Whether a party had a full and fair opportunity to litigate may be examined by questioning 'whether there were significant procedural limitations in the prior proceedings, whether the party had the incentive to fully litigate the issue, or whether effective litigation

17

attempted unsuccessfully to vacate the Agreed Judgment, the defendants had a full and fair opportunity to litigate the issues. In support of its contention, Factoring cites Tway v. Tway (In re Tway), 161 B.R. 274 (Bankr. W.D. Okla. 1993). In Tway, the court merely stated in dicta that "consent judgments have been found to have preclusive effect in bankruptcy proceedings." Id. at 278. The Tway court determined that issue preclusion did not apply because the issue which the plaintiff sought to have precluded was not the same issue that was involved in the prior action. Factoring failed to address the "actually litigated" requirement of Oklahoma's doctrine of issue preclusion.

The defendants' unsuccessful attempt to vacate the Agreed Judgment does not satisfy the "actually litigated" requirement of issue preclusion because there is no evidence in the record to suggest that the state court considered the merits of Factoring's claim.[18] See Mustaine v. Kennedy (In re Kennedy), 243 B.R. 1, 12-13 (Bankr. W.D. Ky 1997)(although plaintiff argued that fraud claim was actually litigated because debtors moved state court to reconsider a consent judgment and the motion was overruled, the court held that the state

---

was limited by the nature or relationship of the parties.'" Custom Heating & Air, Inc. v. Andress (In re Andress), 345 B.R. 358, 369 (Bankr. N.D. Okla. 2006), *quoting* Hill v. Putvin (In re Putvin), 332 B.R. 619, 626 (B.A.P. 10th Cir. 2005)(other citations omitted). Because all elements of issue preclusion must be present in order to apply the doctrine of issue preclusion, the Court need not address all elements of issue preclusion if it determines that one element is not present. See Andress, 345 B.R. at 369. Here, the Court need not address whether Means was afforded a "full and fair opportunity" to litigate the issues of fact and law set forth in the Agreed Judgment.

[18] In Oklahoma, a final judgment may not be "reopened or subsequently considered absent fraud or collusion" and "that fraud which will justify a court of equity in vacating a judgment, must be fraud *extraneous to the issues presented and adjudicated in the case in which judgment was rendered.*" Johnson v. Laing (In re Laing), 945 F.2d 354, 359 (10th Cir. 1991)(internal quotation and citation omitted).

18

court did not make any determination with regard to the merits of plaintiff's claim and thus the state court judgment could not be given preclusive effect). The state court's order overruling the defendant's Motion to Vacate was not a part of the record.

In this case, Means, Jessee and Pounds executed the Agreed Judgment and Stand Still Agreement and stipulated to certain issues of fact and law. The Agreed Judgment and Stand Still Agreement were prepared and proposed by Factoring, Factoring's counsel discussed the matter directly with Means and Jessee, Factoring required that the documents be executed the same day Means and Jessee received the documents, and Means, Jessee and Pounds entered into the Agreed Judgment and Stand Still Agreement without consulting an attorney. Neither the Agreed Judgment nor the Stand Still Agreement contain express language that Means would be precluded from relitigating such issues in a subsequent proceeding or that Means's debt to Factoring would not be dischargeable in a bankruptcy proceeding. Although the Stand Still Agreement recited that the defendants agreed to reaffirm the debt to Factoring in a bankruptcy, Factoring failed to establish that Means, without the benefit of counsel, understood or intended that the specific issues set forth in the Agreed Judgment would be binding in subsequent litigation and that he would be precluded from litigating any of the issues if he ever filed for bankruptcy relief. The Court finds that the language in the Stand Still Agreement is not "far-reaching preclusive language" and it does not "clearly manifest" Means's intent that his debt to Factoring would be nondischargeable in a bankruptcy proceeding.[19]  See GHR Energy Corp., 62 B.R. at 232; Dorminy, 301 B.R. at 604.

---

[19] "A contractual waiver of the dischargeability of a particular debt should be governed by the requirements of [11 U.S.C. § 524(c) and (d)] which control the validity of reaffirmation agreements[.]"  Hester v. Daniel (In re Daniel), 290 B.R. 914, 920 (Bankr.

19

Factoring failed to establish that the parties clearly intended that the issues of fact and law set forth in the Agreed Judgment be foreclosed in other litigation. The Court finds that the intent of the parties cannot be definitively gleaned from the entirety of the proceedings and concludes that the issues and facts set forth in the Agreed Judgment were not actually litigated and determined in the State Court Action. Accordingly, issue preclusion is not applicable, and Means is not precluded from objecting to Factoring's claim that the debt at issue is nondischargeable.

**Conclusion**

For the reasons stated, Factoring's Motion for Summary Judgment is **denied** as to Factoring's claims under Section 523 of the Bankruptcy Code. The Court will issue an Order setting a Scheduling Conference to set appropriate deadlines and a trial date in this proceeding.

**SO ORDERED** this 5th day of October, 2006.

*[signature]*
DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

---

M.D. Ga. 2003). It is not necessary for the Court to address whether the Stand Still Agreement and Agreed Judgment meet the requirements of Section 524 of the Bankruptcy Code.